UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

BRICE CANTRELL,                          )
                                         )
              Plaintiff,                  )
                                         )
v.                                        )        2:24-cv-00246-SDN
                                         )
NATHAN DAY &                              )
PAIGE MICHAUD,                            )
                                         )
              Defendants.                 )

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brice Cantrell, proceeding pro se, sued Brunswick Police Officers Nathan Day and Paige Michaud ("Defendants"), asserting various violations of his constitutional rights.[1] ECF No. 1. Defendants now move for summary judgment, contending there are no disputes of material fact and they are entitled to judgment in their favor. ECF No. 60. For the reasons that follow, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**. Mr. Cantrell's claim of First Amendment retaliatory arrest arising from the incident on the highway may proceed. All other claims against Defendants are dismissed.

**BACKGROUND[2]**

Officers Day and Michaud are patrol officers with the Brunswick Police Department and are responsible for traffic regulation and preliminary investigations,

---

[1] The Court previously dismissed the Town of Brunswick, the Brunswick Police Department, Brunswick Police Officer Paul Hansen, and Brunswick Chief of Police Scott Stewart as defendants in this case. *See* ECF Nos. 21, 42.

[2] Pursuant to the Local Rules, facts in a support statement of material facts, if supported by record citations, will be deemed admitted unless properly controverted. D. Me. Loc. R. 56(f). Because Mr. Cantrell failed to supply an opposing statement of facts and did not "admit, deny, or qualify" the moving parties' facts, D. Me. Loc. R. 56(c)(1), and because Defendants have adequately supported their material facts with record citations, the Court deems the facts in Defendants' Statement of Material Facts ("SMF"), ECF No. 59, to be admitted. *See Allstate Prop. & Cas. Ins. Co. v. Jones,* 704 F. Supp. 3d 253, 254 n.1 (D. Me. 2023). As such, the Court draws the factual background from Defendants' SMF.

among other tasks. Defendants' Statement of Material Facts ("SMF") ¶ 4. In late 2022 and early 2023—the time period immediately preceding the events at issue in this case— Officers Day and Michaud repeatedly observed Mr. Cantrell becoming more agitated and erratic, and they feared his mental health was deteriorating. *Id*. ¶¶ 13, 16. The officers often encountered Mr. Cantrell because he frequently films police conducting public arrests in and around Brunswick, Maine. *See id*. ¶ 11. Mr. Cantrell had five encounters with the officers which form the basis of his claims here.

## I.    June 23, 2023

On June 23, 2023, Mr. Cantrell followed police officers to a motor vehicle crash on Interstate I-295 in order to film the encounter. SMF ¶ 19. Officer Day responded to the crash and observed Mr. Cantrell walking along the side of the highway toward the crash scene. *Id*. ¶ 26. Officer Day left the scene and later found Mr. Cantrell standing by his truck in a nearby parking lot. *Id*. ¶¶ 36–37. Officer Day approached Mr. Cantrell and asked for identification, which Mr. Cantrell was reluctant to provide. *Id*. ¶¶ 38–39. Officer Day explained Mr. Cantrell had violated state law by walking on the side of the highway, which disallows pedestrian use. *Id*. ¶ 40. During this conversation, Mr. Cantrell was holding his phone and attempting to film the encounter. SMF ¶¶ 43–44. Due to his unwillingness to provide his identification and his growing agitation, and Officer Day's prior knowledge of and observations of Mr. Cantrell, Officer Day placed Mr. Cantrell in handcuffs and put his phone on the truck bed. *Id*. ¶¶ 45–47. After a few minutes of restraint, Mr. Cantrell informed Officer Day that he had had surgery on both of his shoulders and the handcuffs were causing him pain. *Id*. ¶ 53. Officer Day "made the decision to keep Plaintiff in handcuffs" because of Mr. Cantrell's perceived volatility and

because Officer Day was the sole officer at the scene.[3] *Id*. ¶ 55. In total, Mr. Cantrell was handcuffed for approximately twelve minutes. *Id*. ¶ 69. Officer Day eventually wrote Mr. Cantrell a citation for walking on the highway. *Id*. ¶ 61. While doing so, Officer Day stated, "You're getting a citation today for being on a limited access highway as a pedestrian. You're out on 295 filming." ECF No. 57-1 at 15:32–15:41 (police dashcam footage). Mr. Cantrell asked afterwards, "Why did you take my phone from me? All I wanted to do was start recording and then I would gladly gave you [my identification]," to which Officer Day replied that Mr. Cantrell had been aggressive and was not complying with orders. *Id*. at 16:05–16:25.

## II.    October 25, 2023

On October 25, 2023, Officer Michaud observed a gray Chevrolet truck, which she knew to belong to Mr. Cantrell, with a defective driver's-side headlight and conducted a traffic stop. SMF ¶¶ 76–77. Mr. Cantrell, who was driving the truck, was initially unwilling to provide his license and registration and stated he did not want to participate in Officer Michaud's "racketeering." *Id*. ¶ 79. He eventually complied with her request for documents and Officer Michaud issued him a traffic citation. *Id*. ¶¶ 80–86. Mr. Cantrell subsequently contested the citation, and on January 11, 2024, a Violations Bureau Judge found he had committed the violation as charged. *Id*. ¶ 87.

## III.    December 17, 2023

On December 17, 2023, Mr. Cantrell followed police officers—one of whom was Officer Day—to a domestic disturbance involving a vehicle parked in a business parking lot in Brunswick. SMF ¶¶ 91–95. In order to film the police encounter, Mr. Cantrell parked

---

[3] Another officer arrived on the scene several minutes after Mr. Cantrell was handcuffed in order to support Officer Day. SMF ¶ 56.

his car in front of an adjacent business, VIP Tires & Service, and got out of his vehicle to approach the officers. *Id.* ¶ 95. A VIP employee came out of the building and flagged down Officer Day to request that the police issue Mr. Cantrell a no-trespass warning because he was parked in their lot when he was not a business customer. *Id.* ¶¶ 103–06. Officer Day wrote the trespass warning and gave it to Mr. Cantrell. *Id.* ¶ 109.

## IV.    April 7, 2024

On April 7, 2024, Mr. Cantrell parked in the parking lot at the Brunswick Police Station and walked down the street. SMF ¶ 114. When he returned to his car approximately ten minutes later, Officer Michaud came outside and explained that station parking was reserved only for those people utilizing police services. *Id.* ¶¶ 116–17. Mr. Cantrell asserted he was allowed to park wherever he wanted because of his "Fourth Amendment rights." *Id.* ¶ 120. Officer Michaud gave him a verbal warning for his parking and he left. *Id.* ¶ 121.

## V.    June 3, 2024

On June 3, 2024, Officer Day observed a black Jeep with a broken passenger-side taillight drive by while he was conducting a traffic stop of another vehicle. SMF ¶ 130. After completing the traffic stop, Officer Day came upon the Jeep again farther down the road and pulled it over. *Id.* ¶¶ 132–34. Mr. Cantrell was driving the Jeep and complied with Officer Day's requests for license and registration. *Id.* ¶ 135. Officer Day issued Mr. Cantrell a citation for a defective taillight, which Mr. Cantrell later contested. *Id.* ¶¶ 136–37. On August 21, 2025, a Violations Bureau Judge found Mr. Cantrell had committed the violation as charged. *Id.* ¶ 137.

**ANALYSIS**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine"' if the evidence would permit a reasonable jury to resolve the issue in favor of the non-moving party. *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021). A fact is "material" if it has the potential to affect the outcome of the case. *Id*. The Court "review[s] the record in the light most favorable to the nonmoving party, and . . . draw[s] all reasonable inferences in the nonmoving party's favor." *Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358, 360 (1st Cir. 2016). Because Mr. Cantrell is pro se, the Court construes his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a litigant's pro se status does not excuse compliance with applicable substantive and procedural requirements. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

Although Mr. Cantrell's pleadings are not models of clarity, he asserts two constitutional claims under 42 U.S.C. § 1983.[4] First, he claims Defendants violated his Fourth Amendment rights by unlawfully detaining him without probable cause and using excessive force when they handcuffed him. *See* ECF No. 25 at 3. Second, he alleges First Amendment retaliation, contending the encounters with Defendants and subsequent citations were in retaliation for his First Amendment–protected right to film police in

---

[4] The Court previously granted Mr. Cantrell leave to amend his complaint. *See* ECF No. 42 at 9–10. Although he did not file a First Amended Complaint on the docket, where, as here, a plaintiff is proceeding pro se, the Court "endeavor[s], within reasonable limits, to guard against the loss of pro se claims due to technical defects." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 20 (1st Cir. 2004). As the Court previously found, Mr. Cantrell's first proposed amended complaint, *see* ECF No. 25, is clearer than his original complaint and provides more detail regarding the allegations against Officers Day and Michaud, *see* ECF No. 42 at 9. The Court thus treats his proposed first amended complaint, ECF No. 25, as operative for purposes of this motion.

public. *See id*. Defendants deny any constitutional violation and invoke qualified immunity.

## I.   Fourth Amendment Claims

Mr. Cantrell asserts Officer Day violated the Fourth Amendment during the June 23, 2023, highway incident by using excessive force when handcuffing him and by conducting an unreasonable seizure. Defendants respond that both claims fail as a matter of law and that qualified immunity applies.

## A. Excessive Force

An excessive force claim under the Fourth Amendment requires a showing that "the defendant employed force that was unreasonable under all the circumstances." *Morelli v. Webster*, 552 F.3d 12, 23 (1st Cir. 2009). The "reasonableness" inquiry is objective and asks whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to any intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Mr. Cantrell's excessive force claim rests on his statement to Officer Day that handcuffing him with his hands behind his back hurt his shoulders because he had recently had surgery on them. ECF No. 57-1 at 04:40–04:50. The Supreme Court has recognized the general principle that force violates the Fourth Amendment if it is "excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). When qualified immunity is invoked, however, the Court asks whether the plaintiff's clearly established right was violated under "the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quotation modified).

6

Two First Circuit decisions guide this analysis. In *Hunt v. Massi*, the plaintiff requested that officers handcuff him in front rather than behind his back because a recent surgery caused pain. 773 F.3d 361, 368 (1st Cir. 2014). The Court framed the issue as whether, at the time of his arrest in 2011, the plaintiff had a clearly established right to front-handcuffing when it would not have been obvious to a reasonable officer that his condition prevented him from placing his hands behind his back. *Id*. The Court rejected the excessive force claim, observing that no case held that "ignoring an uncooperative suspect's claim of *invisible* injury (such that handcuffing could be harmful) made during the course of handcuffing constituted excessive force." *Id*. at 370 (quoting *Beckles v. City of N.Y.*, 492 Fed. App'x 181, 183 (2d Cir. 2012) (modifications in original)). The same reasoning applies here. A reasonable officer in Officer Day's position would not have understood that handcuffing Mr. Cantrell behind his back constituted excessive force, particularly given that Mr. Cantrell did not report pain until several minutes after the officer applied the handcuffs. *See* ECF No. 57-1 at 03:04–04:40.

In *Calvi v. Knox County*, the First Circuit rejected a plaintiff's excessive force claim by finding it was "[s]tandard police practice" to handcuff a person with hands behind the back, the officer's decision not to deviate from that practice was a "judgment call," and the restraint lasted no longer than reasonably necessary to effectuate arrest. 470 F.3d 422, 428 (1st Cir. 2006). Here, the record shows that Officer Day followed standard handcuffing procedure. *See* ECF No. 60 at 23. Officer Day maintained the handcuffs only until backup arrived and the scene stabilized. Moreover, the First Circuit has rejected handcuffing as excessive where the officer is aware of "recent criminal history" of the individual and "encounter[s] some admitted resistance." *Hunt*, 773 F.3d at 370. Here, Officer Day knew of Mr. Cantrell's recent escalating mental health concerns and his prior

history with police and reasonably considered those facts in assessing officer safety without another officer on the scene. ECF No. 60 at 23.

Thus, on this record, no reasonable jury could find that Officer Day's use of force was objectively unreasonable, nor that it violated clearly established law. Defendants' motion for summary judgment as to the excessive force claim is **GRANTED**.

### B.  Unreasonable Seizure

Mr. Cantrell contends the decision to detain him and place him in handcuffs constituted an unreasonable seizure in violation of the Fourth Amendment. ECF No. 25 at 3. Defendants respond that Mr. Cantrell's detention was akin to a *Terry* stop and was necessary to issue a citation for walking on the highway. ECF No. 60 at 25.

A *Terry* stop "permits officers to stop and briefly detain a person for investigative purposes, and diligently pursue a means of investigation likely to confirm or dispel their suspicions quickly." *United States v. Trueber*, 238 F.3d 79, 91–92 (1st Cir. 2001) (quotation modified). A brief investigatory detention under *Terry* does not violate the Fourth Amendment if the officers possess a "reasonable and articulable suspicion" of past or present criminal activity. *United States v. McCarthy*, 77 F.3d 522, 529 (1st Cir. 1996). However, "[a] valid investigatory stop can become an unconstitutional interference with a suspect's Fourth Amendment rights as police conduct becomes overly intrusive and amounts to an arrest." *Shah v. Holloway*, Civ. No. 07-10352, 2009 WL 2754406, at *9 (D. Mass. Aug. 20, 2009). The relevant question is whether the encounter involved "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Maguire*, 359 F.3d 71, 77 (1st Cir. 2004) (quotation modified).

The undisputed record, including the police dashcam footage, shows that Officer Day requested Mr. Cantrell produce his identification. *See* ECF No. 57-1 at 02:30–02:34.

8

Instead of complying, Mr. Cantrell used his phone and attempted to record the encounter. *Id*. at 02:44–03:04. Officer Day reasonably construed Mr. Cantrell's behavior as a refusal to abide by officer instructions and informed Mr. Cantrell he would be handcuffed. He also stated that the restraint was not an arrest. *Id*. at 05:10–05:25. He kept Mr. Cantrell in handcuffs for approximately twelve minutes, including several minutes after backup arrived.

"[T]he use of handcuffs in the course of an investigatory stop does not automatically convert the encounter into a de facto arrest." *United States v. Acosta-Colon*, 157 F.3d 9, 18 (1st Cir. 1998) (quotation modified). Officers may use such measures if they reasonably believe they are necessary to protect officer safety. *Id*. To justify the use of handcuffs during a *Terry* stop, the government must identify specific facts or circumstances that could support a reasonable belief that such restraints were necessary to carry out the stop without exposing officers, the public, or the suspect to undue risk. *Id*. at 19. Here, Defendants point to Mr. Cantrell's noncompliance with requests to provide identification, his increasing agitation, and his recent mental health struggles as indicia of his potential risk to officer safety. *See* ECF No. 60 at 26. These facts justify the use of handcuffs during the investigatory stop and do not, without more, convert the encounter into a de facto arrest.

In any event, even if the encounter rose to the level of an arrest, probable cause existed. Probable cause arises when the facts and circumstances within the officer's knowledge would warrant a prudent person in believing that the suspect has committed or is committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the

9

offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Officer Day reasonably believed Mr. Cantrell had violated the law by walking on the highway where pedestrians were prohibited. Any resulting arrest was therefore lawful at its inception, and Mr. Cantrell's Fourth Amendment claim fails as a matter of law. Defendants' motion for summary judgment as to the unreasonable seizure is **GRANTED**.

## II.    First Amendment Retaliation Claims

To establish liability under section 1983, a Plaintiff must establish "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or law of the United States." *Vélez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 151–52 (1st Cir. 2006). The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see* U.S. Const. amend. I. To survive summary judgment on a First Amendment retaliation claim, a plaintiff must produce evidence that he engaged in protected conduct, suffered an adverse action, and that the protected conduct was a "substantial or motivating factor" in the adverse action. *Gattineri v. Town of Lynnfield*, 58 F.4th 512, 514 (1st Cir. 2023).

## A. Traffic Citations

The Court first addresses the two instances in which Defendants issued Mr. Cantrell traffic citations for malfunctioning vehicle lights.[5] To sustain a First Amendment retaliation claim based on a retaliatory prosecution theory, Plaintiff must show the

---

[5] The Court assumes without deciding that a traffic citation constitutes a form of adverse action. *See, e.g.*, *Maddison v. City of Northampton*, 533 F. Supp. 3d 39, 44 (D. Mass. 2021) (considering a traffic stop and citation to be a form of retaliation for purposes of the First Amendment).

10

absence of probable cause for the criminal charge. *See Gericke v. Begin*, 753 F.3d 1, 6 (1st Cir. 2014).

The undisputed factual record shows that on October 25, 2023, Officer Michaud observed Mr. Cantrell's vehicle with a broken headlight, conducted a traffic stop, and issued him a citation. The record, including dashboard camera footage, *see* ECF No. 57-4, contains no evidence that Mr. Cantrell was filming police at the time of the stop. Mr. Cantrell identifies no evidence from which a reasonable jury could find that, absent a retaliatory motive, Officer Michaud would have declined to enforce the traffic violation. *See United States v. Beauregard*, No. 18-CR-00192, 2019 WL 2619530, at *7 (D. Me. June 26, 2019) ("Maine law gives a law enforcement officer the right to stop a vehicle if the law enforcement officer 'has reasonable and articulable suspicion to believe that a violation of law has taken or is taking place.'") (quoting 29-A M.R.S. § 105(1))); 29-A M.R.S. § 1904 (Maine headlight law). Accordingly, Mr. Cantrell fails to establish causation with respect to the October 25 citation.

The second citation fares no better. The record, including dashcam footage, shows without dispute that Mr. Cantrell's taillight was not functioning when Officer Day stopped him on June 3, 2024. *See* ECF No. 57-8; 29-A M.R.S. § 1905 (Maine rear lights law). Although Mr. Cantrell's own video footage, which Defendants submitted as part of the record, shows that he filmed an earlier, unrelated traffic stop involving Officer Day, *see* ECF No. 57-7, the undisputed record establishes that the later stop occurred at a different location and after some interval of time.

The Court recognizes that Mr. Cantrell has a protected First Amendment right to film police activity in public, subject to reasonable restrictions. *See Gericke*, 753 F.3d at 8. Although the precise timing between these events is unclear, that ambiguity does not

11

alter the analysis. The dispositive question in a retaliatory prosecution claim is whether probable cause supported the charge. *See Lozman v. Riviera Beach*, 585 U.S. 87, 97 (2018). If probable cause existed, "the case ends." *Id*. While prior negative interactions between a plaintiff and an officer may permit a weak inference of retaliatory motive, the undisputed facts here establish probable cause and provide no meaningful evidence of retaliation. The dashcam footage confirms a clear equipment violation and the stop was separated in both time and location from Mr. Cantrell's protected activity. Accordingly, Officer Day had reasonable suspicion to conduct the stop, and no reasonable jury could find that Mr. Cantrell's protected activity was the substantial and motivating cause of the citation.[6] Defendants' motion for summary judgment on these two claims is **GRANTED**.

## B. Parking Lot Warning

On April 7, 2024, Officer Michaud issued Mr. Cantrell a verbal warning instructing him not to park in the police station parking lot unless he was actively conducting business with the police. Mr. Cantrell does not allege that Officer Michaud issued a citation, towed his vehicle, or otherwise took adverse action against him. Because Mr. Cantrell fails to identify any adverse action, his First Amendment retaliation claim based on this incident cannot proceed. *See Gattineri*, 58 F.4th at 514 (requiring adverse action to sustain a First Amendment retaliation claim). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on this claim.[7]

---

[6] Because the Court concludes Mr. Cantrell's claims fail for lack of causation, it need not address Defendants' argument that his claims are barred by *Heck v. Humphrey*. *See* ECF No. 60 at 10–11 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

[7] Because the Court grants summary judgment in favor of Defendant on both claims involving Officer Michaud, the Court dismisses her as a defendant.

## C. No-Trespass Warning

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or federal law. *See Ahern v. O'Donnell*, 109 F.3d 809, 815 (1st Cir. 1997). The Constitution does not confer a protected right to patronize a private business. *Cf. City of Chi. v. Morales*, 527 U.S. 41, 53 (1999) (recognizing "the freedom to loiter for innocent purposes [on public property] is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment"). Accordingly, the Court does not treat a no-trespass warning issued by police at the request of a private party as a criminal charge for First Amendment purposes, nor does it find that such a warning, without more, infringes constitutional rights. Moreover, the warning was issued at the business employee's behest, and Officer Day repeatedly stated he was issuing it only because the employee asked, not because he personally decided to issue it. *See* ECF No. 57-5. On these facts, Mr. Cantrell fails to establish that his protected activity was the but-for cause of the no-trespass warning and therefore does not state a cognizable First Amendment claim. The Court **GRANTS** Defendants' motion for summary judgment on this claim.

## D. Walking on Highway

On June 22, 2023, Mr. Cantrell walked on the side of Interstate I-295 ostensibly to film police responding to a crash. Several police officers at the scene, including Officer Day, observed Mr. Cantrell walking. *See* SMF ¶¶ 26, 29. Some time later that same day, Officer Day located Mr. Cantrell in a parking lot, at which point Mr. Cantrell stated he wanted to record the encounter on his phone. *Id.* ¶¶ 42–44. Due to his apparent increasing volatility and refusal to provide his license and registration, Officer Day did not allow Mr. Cantrell to use his phone to record their interaction and handcuffed him for twelve

13

minutes before subsequently issuing him a citation for walking on the highway. *Id*. ¶¶ 46, 61, 69. In issuing the citation, Officer Day stated, "You're getting a citation today for being on a limited access highway as a pedestrian. You're out on 295 filming." ECF No. 57-1 at 15:32–15:41. Construing his pleadings liberally, Mr. Cantrell appears to allege the citation was a retaliatory prosecution and his handcuffing was a retaliatory arrest for observing the police activity on the highway and for attempting to record his subsequent interaction with Officer Day. *See* ECF No. 25 at 3.

### 1. *Retaliatory Arrest*

To assert a retaliatory arrest claim, the Plaintiff must establish the protected activity was a "substantial" or "motivating" factor for the subsequent retaliatory action. *Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004) (quotation modified). According to the Supreme Court, "because probable cause speaks to the objective reasonableness of an arrest, its absence will—as in retaliatory prosecution cases—generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (internal citation omitted).

In order to arrest Mr. Cantrell, Officer Day was required to have probable cause. *Morelli*, 552 F.3d at 20. Probable cause to arrest "exists when the facts and circumstances within the [arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *Rivera v. Murphy*, 979 F.2d 259, 263 (1st Cir. 1992) (quotation modified). The undisputed facts indicate Officer Day both personally observed and received information from other officers that Mr. Cantrell was

walking on the side of the highway when he should not have been. As explained above, *see supra* Subsection I.B, probable cause to arrest therefore existed.

The existence of probable cause generally defeats a retaliatory arrest claim subject to a narrow exception when the plaintiff "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. To illustrate the concern animating this so-called *Nieves* exception, the Supreme Court observed that "jaywalking is endemic but rarely results in arrest," and explained that therefore that if "an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id*. Consistent with this reasoning, the Court in *Gonzalez v. Trevino* describes the exception as applying in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." 602 U.S. 653, 658 (2024). Here, Mr. Cantrell has been vocal about his desire to film police in public. Although it is not their burden, Defendants admit they can present no data as to how often people are arrested for walking on the highway because the Maine State Police generally issues such citations, not the Brunswick Police. *See* SMF ¶ 72. While Mr. Cantrell advances confusing factual assertions and does not directly refute Defendants' statements of material fact, the Court must construe the evidence in his favor as the nonmoving party. And at the motion for summary judgment stage, the Court cannot grant judgment for the moving party if there are genuine disputes of material fact. *See Taite*, 999 F.3d at 93.

The *Nieves* exception exists to address the risk that some police officers will use their authority as a tool to suppress protected speech, rather than to enforce the law. *See*

*Nieves*, 587 U.S. at 406. Construed liberally, Mr. Cantrell's filings and the summary judgment record—viewed in the light most favorable to him as the nonmoving party—support the inference that officers treated him differently from similarly situated individuals who would not have been arrested or detained for their protected speech. On this record, the Court finds a disputed question of material fact exists as to whether Mr. Cantrell's filming—on the highway or later in the parking lot—was a substantial or motivating factor for his arrest. Mr. Cantrell has thus presented sufficient evidence of a constitutional violation. *See* ECF No. 25 at 2 ("I am threatened, to steal my property for exer[cis]ing my rights to travel, without unr[e]asonable suspic[i]on of a crime, harassing, because I recorded police."); *id.* at 3 ("[A]s officer Day handcuffed brice cantrell i said 'its my right to record my arrest' . . . color of law deprivation of my liberty and first amendment rights . . . .").

The Court now turns to Defendants' qualified immunity argument: whether qualified immunity shields Defendants because the right at issue was not "clearly established" at the time of the alleged violation. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A right is clearly established if every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

At the time of this incident in June 2023,[8] the First Circuit had addressed the propriety of retaliatory arrest claims under the First Amendment. In *Gericke*, it held that filming police is a clearly established First Amendment right. 753 F.3d at 9 ("In the absence of a reasonable restriction, it is self-evident, based on first principles, that [a defendant's] First Amendment right to film police carrying out their duties in public

---

[8] Mr. Cantrell's complaint asserts the highway incident occurred in June 2024, *see* ECF No. 25 at 3, but Defendants' SMF, which is bolstered by affidavits and dashcam footage and which the Court construes as true, states it occurred in June 2023, *see* SMF ¶ 19.

16

remained unfettered."). A reasonable officer would have known that citing Mr. Cantrell in response to his filming would violate his First Amendment right.

The qualified immunity analysis turns on which version of events the factfinder credits—Mr. Cantrell's or Defendants'. Under Defendants' account, a reasonable jury could conclude that officers arrested Mr. Cantrell solely because he was walking on the highway in violation of law. Under Mr. Cantrell's account, however, the sequence of events is materially different. He asserts that, some time after the crash on the highway, Officer Day sought him out while Mr. Cantrell was parked in a parking lot and not engaged in any ongoing offense (in contrast to the traffic stops, where his vehicle had obvious light defects). When Mr. Cantrell informed Officer Day he wished to film their interaction, Officer Day placed Mr. Cantrell in handcuffs and did not allow him to set up his phone to film. *See* ECF No. 57-1 at 02:37–03:01. Mr. Cantrell disputed that he had violated state law and asserted he was being unlawfully arrested. *See id.* at 04:24–04:33; *id.* at 05:19–05:22 (Cantrell: "I have the right to record you if you're gonna arrest me."). Officer Day also referenced the filming as part of the rationale for issuing the citation. *See* ECF No. 57-1 at 15:34–15:41 ("You're getting a citation today for being on a limited access highway as a pedestrian. You're out on 295 filming."). On this record, a jury could reasonably find that Mr. Cantrell's filming of police was a "substantial" or "motivating" factor in the arrest. *Powell*, 391 F.3d at 16 (quotation modified).

The Court therefore denies Defendants' claim of qualified immunity at this stage of the litigation. Mr. Cantrell's First Amendment retaliatory arrest claim may proceed, and the Court **DENIES** Defendants' motion for summary judgment on that claim.

## 2. *Retaliatory Prosecution*

To establish a causal connection between protected speech and a retaliatory prosecution, a plaintiff must plead and prove the absence of probable cause for the underlying prosecution. *See Hartman*, 547 U.S. at 260–61. "Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive." *Id*. at 261. Even if the officer's retaliatory motive is apparent, that fact alone does not establish that the officer caused the prosecutor to bring charges that the prosecutor otherwise would not have pursued. *Id*. at 263.

As with the traffic citations, the Court presumes without deciding that the citation for walking on the highway constitutes an adverse action for the purposes of a retaliatory prosecution claim on the ground that it is an official government action that could "have a chilling effect on the [plaintiff's] exercise of First Amendment rights." *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011); *see, e.g.*, *Maddison v. City of Northampton*, 533 F. Supp. 3d 39, 44 (D. Mass. 2021) (considering a traffic citation to be an adverse action in a retaliatory prosecution case); *Snoeyenbos v. Curtis*, 439 F. Supp. 3d 719, 734 (E.D. Va. 2020) (same). Although a genuine issue of material fact exists as to whether Officer Day was motivated by retaliatory animus, the undisputed existence of probable cause for Mr. Cantrell's walking on the side of the highway in violation of state law forecloses his retaliatory prosecution claim as a matter of law. *See Hartman*, 547 U.S. at 265–66 ("Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing

18

as an element of a plaintiff's case, and we hold that it must be pleaded and proven."); *cf. Waterman v. City of Taunton*, 742 F. Supp. 3d 144, 164 (D. Mass. 2024) (denying summary judgment where "a genuine dispute of fact exists as to whether [police] had probable cause to arrest [defendant] for disorderly conduct").

In sum, the Court **GRANTS** Defendants' motion for summary judgment as to Mr. Cantrell's retaliatory prosecution claim.

## CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment. ECF No. 60. The Court **DENIES** Defendants' motion as to Plaintiff's First Amendment retaliatory arrest claim. The Court **GRANTS** Defendants' motion as to all other claims. Officer Michaud is **DISMISSED** as a defendant.

**SO ORDERED.**

Dated this 5th day of June, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

19